MICHAEL FAILLACE & ASSOCIATES, P.C.
60 East 42nd Street, Suite 4510
New York, New York 10165
Telephone: (212) 317-1200
Facsimile: (212) 317-1620
*Attorneys for Plaintiffs*

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
--------------------------------------------------------X
RAFAEL PAJOJ GUARQUEX, JOSE
ALFREDO BEATRIZ MENDEZ, and
GUILLERMO RODRIGUEZ PORTILLO,
*individually and on behalf of others similarly*
*situated,*

|  |  |
|---|---|
| | **COMPLAINT** |
| *Plaintiffs*, | **COLLECTIVE ACTION UNDER** |
| | **29 U.S.C. § 216(b)** |
| -against- | **ECF Case** |

240 BBJ PUB INC.  (D/B/A JACK DOYLE'S
IRISH PUB), LAML LLC  (D/B/A JOHN
SULLIVAN'S BAR & GRILL), 505 HP LLC
(D/B/A THE TAILOR PUBLIC HOUSE),
JOHN CREEGAN , BRENDAN CREEGAN ,
FERNANDO DOE , JOHN DOE , and
GLORIA DOE ,

                    *Defendants.*
--------------------------------------------------------X

        Plaintiffs Rafael Pajoj Guarquex, Jose Alfredo Beatriz Mendez, and Guillermo Rodriguez

Portillo , individually and on behalf of others similarly situated (collectively, "Plaintiffs"), by and

through their attorneys, Michael Faillace & Associates, P.C., upon their knowledge and belief, and

as against 240 BBJ Pub Inc. (d/b/a Jack Doyle's Irish Pub), LAML LLC (d/b/a John Sullivan's Bar

& Grill), 505 HP LLC (d/b/a The Tailor Public House), ("Defendant Corporations"), John

Creegan,  Brendan Creegan,  Fernando Doe,  John Doe, and  Gloria Doe, ("Individual

Defendants"), (collectively, "Defendants"), allege as follows:

## NATURE OF ACTION

1.      Plaintiffs are former employees of Defendants 240 BBJ Pub Inc. (d/b/a Jack Doyle's Irish Pub), LAML LLC (d/b/a John Sullivan's Bar & Grill), 505 HP LLC (d/b/a The Tailor Public House), John Creegan, Brendan Creegan, Fernando Doe, John Doe, and Gloria Doe.

2.       Defendants own, operate, or control three Irish bars located at 240 West 35th Street, New York, NY 10001 under the name "Jack Doyle's Irish Pub", at 210 West 35th Street, New York, NY 10001 under the name "John Sullivan's Bar & Grill", and at 505 8th Ave, New York, New York 10018 under the name "The Tailor Public House".

3.      Upon information and belief, individual Defendants John Creegan, Brendan Creegan, Fernando Doe, John Doe, and Gloria Doe, serve or served as owners, managers, principals, or agents of Defendant Corporations and, through these corporate entities, operate or operated the bars as a joint or unified enterprise.

4.      Plaintiffs were employed as a salad maker, a busser, a barback, a food runner, a porter and dishwashers at the bars located at 240 West 35th Street, New York, NY 10001, 210 West 35th Street, New York, NY 10001, and 505 8th Ave, New York, New York 10018.

5.      At all times relevant to this Complaint, Plaintiffs worked for Defendants in excess of 40 hours per week, without appropriate minimum wage, overtime, and spread of hours compensation for the hours that they worked.

6.      Rather, Defendants failed to maintain accurate recordkeeping of the hours worked and failed to pay Plaintiffs appropriately for any hours worked, either at the straight rate of pay or for any additional overtime premium.

7.      Further, Defendants failed to pay Plaintiffs the required "spread of hours" pay for any day in which they had to work over 10 hours a day.

8.      Furthermore, Defendants repeatedly failed to pay Plaintiffs wages on a timely basis.

9.      Defendants employed and accounted for Plaintiff Rodriguez as a barback in their payroll. Regardless, at all relevant times, Defendants paid Plaintiff Rodriguez at a rate that was lower than the required tip-credited rate.

10.     Upon information and belief, Defendants employed the policy and practice of disguising Plaintiff Rodriguez's actual duties in payroll records by designating him as a barback instead of as a non-tipped employee. This allowed Defendants to avoid paying Plaintiff Rodriguez at the minimum wage rate and enabled them to pay him at the tip-credit rate (which they still failed to do).

11.     In addition, Defendants maintained a policy and practice of unlawfully appropriating Plaintiff Rodriguez's and other tipped employees' tips and made unlawful deductions from these Plaintiffs' and other tipped employees' wages.

12.     Defendants' conduct extended beyond Plaintiffs to all other similarly situated employees.

13.     At all times relevant to this Complaint, Defendants maintained a policy and practice of requiring Plaintiffs and other employees to work in excess of forty (40) hours per week without providing the minimum wage and overtime compensation required by federal and state law and regulations.

14.     Plaintiffs now bring this action on behalf of themselves, and other similarly situated individuals, for unpaid minimum and overtime wages pursuant to the Fair Labor Standards Act of 1938, 29 U.S.C. § 201 *et seq*. ("FLSA"), and for violations of the N.Y. Labor Law §§ 190 *et seq*. and 650 *et seq*. (the "NYLL"), and the "spread of hours" and overtime wage orders of the New York Commissioner of Labor codified at N.Y. COMP. CODES R. & REGS. tit. 12, § 146-1.6 (herein the "Spread of Hours Wage Order"), including applicable liquidated damages, interest, attorneys' fees and costs.

15.     Plaintiffs seek certification of this action as a collective action on behalf of themselves, individually, and all other similarly situated employees and former employees of Defendants pursuant to 29 U.S.C. § 216(b).

## JURISDICTION AND VENUE

16.     This Court has subject matter jurisdiction under 28 U.S.C. § 1331 (federal question) and the FLSA, and supplemental jurisdiction over Plaintiffs' state law claims under 28 U.S.C. § 1367(a).

17.      Venue is proper in this district under 28 U.S.C. § 1391(b) and (c) because all, or a substantial portion of, the events or omissions giving rise to the claims occurred in this district, Defendants maintain their corporate headquarters and offices within this district, and Defendants operate an Irish bar located in this district. Further, Plaintiffs were employed by Defendants in this district.

## PARTIES

### *Plaintiffs*

18.     Plaintiff Rafael Pajoj Guarquex ("Plaintiff Pajoj" or "Mr. Pajoj") is an adult individual residing in Queens County, New York.

19.     Plaintiff Pajoj was employed by Defendants at Jack Doyle's Irish Pub from approximately March 2015 until on or about November 2015.

20.     Plaintiff Jose Alfredo Beatriz Mendez ("Plaintiff Beatriz" or "Mr. Beatriz") is an adult individual residing in Queens County, New York.

21.     Plaintiff Beatriz was employed by Defendants at John Sullivan's Bar & Grill from approximately May 17, 2014 until on or about October 2015 and from approximately November 2017 until on or about November 25, 2019.

22.     Plaintiff Guillermo Rodriguez Portillo ("Plaintiff Rodriguez" or "Mr. Rodriguez") is an adult individual residing in Queens County, New York.

23.     Plaintiff Rodriguez was employed by Defendants at John Sullivan's and The Tailor Public House from approximately February 15, 2019 until on or about October 6, 2019 and then from approximately April 4, 2019 until on or about October 6, 2019.

*Defendants*

24.     At all relevant times, Defendants owned, operated, or controlled three Irish bars, located at 240 West 35th Street, New York, NY 10001 under the name "Jack Doyle's Irish Pub", at 210 West 35th Street, New York, NY 10001 under the name "John Sullivan's Bar & Grill", and at 505 8th Ave, New York, New York 10018 under the name "The Tailor Public House".

25.     Upon information and belief, 240 BBJ Pub Inc. (d/b/a Jack Doyle's Irish Pub) is a domestic corporation organized and existing under the laws of the State of New York. Upon information and belief, it maintains its principal place of business at 240 West 35th Street, New York, NY 10001.

26.     Upon information and belief, LAML LLC (d/b/a John Sullivan's Bar & Grill) is a domestic corporation organized and existing under the laws of the State of New York. Upon information and belief, it maintains its principal place of business at 210 West 35th Street, New York, NY 10001.

27.     Upon information and belief, 505 HP LLC (d/b/a The Tailor Public House) is a domestic corporation organized and existing under the laws of the State of New York. Upon information and belief, it maintains its principal place of business at 505 8th Ave, New York, New York 10018.

28.     Defendant John Creegan is an individual engaging (or who was engaged) in business in this judicial district during the relevant time period. Defendant John Creegan is sued individually

in his capacity as owner, officer and/or agent of Defendant Corporations. Defendant John Creegan possesses operational control over Defendant Corporations, an ownership interest in Defendant Corporations, and controls significant functions of Defendant Corporations. He determines the wages and compensation of the employees of Defendants, including Plaintiffs, establishes the schedules of the employees, maintains employee records, and has the authority to hire and fire employees.

29.     Defendant Brendan Creegan is an individual engaging (or who was engaged) in business in this judicial district during the relevant time period. Defendant Brendan Creegan is sued individually in his capacity as owner, officer and/or agent of Defendant Corporations. Defendant Brendan Creegan possesses operational control over Defendant Corporations, an ownership interest in Defendant Corporations, and controls significant functions of Defendant Corporations. He determines the wages and compensation of the employees of Defendants, including Plaintiffs, establishes the schedules of the employees, maintains employee records, and has the authority to hire and fire employees.

30.     Defendant Fernando Doe is an individual engaging (or who was engaged) in business in this judicial district during the relevant time period. Defendant Fernando Doe is sued individually in his capacity as a manager of Defendant Corporations. Defendant Fernando Doe possesses operational control over Defendant Corporations and controls significant functions of Defendant Corporations. He determines the wages and compensation of the employees of Defendants, including Plaintiffs, establishes the schedules of the employees, maintains employee records, and has the authority to hire and fire employees.

31.     Defendant John Doe is an individual engaging (or who was engaged) in business in this judicial district during the relevant time period. Defendant John Doe is sued individually in his capacity as a manager of Defendant Corporations. Defendant John Doe possesses operational control

over Defendant Corporations and controls significant functions of Defendant Corporations. He determines the wages and compensation of the employees of Defendants, including Plaintiffs, establishes the schedules of the employees, maintains employee records, and has the authority to hire and fire employees.

32.     Defendant Gloria Doe is an individual engaging (or who was engaged) in business in this judicial district during the relevant time period. Defendant Gloria Doe is sued individually in her capacity as a manager of Defendant Corporations. Defendant Gloria Doe possesses operational control over Defendant Corporations and controls significant functions of Defendant Corporations. She determines the wages and compensation of the employees of Defendants, including Plaintiffs, establishes the schedules of the employees, maintains employee records, and has the authority to hire and fire employees.

## FACTUAL ALLEGATIONS

*Defendants Constitute Joint Employers*

33.     Defendants operate three Irish bars located at various locations around Manhattan.

34.     Individual Defendants, John Creegan, Brendan Creegan, Fernando Doe, John Doe, and Gloria Doe, possess operational control over Defendant Corporations, possess ownership interests in Defendant Corporations, or control significant functions of Defendant Corporations.

35.     Defendants are associated and joint employers, act in the interest of each other with respect to employees, pay employees by the same method, and share control over the employees.

36.     Each Defendant possessed substantial control over Plaintiffs' (and other similarly situated employees') working conditions, and over the policies and practices with respect to the employment and compensation of Plaintiffs, and all similarly situated individuals, referred to herein.

37.     Defendants jointly employed Plaintiffs (and all similarly situated employees) and are Plaintiffs' (and all similarly situated employees') employers within the meaning of 29 U.S.C. 201 *et seq.* and the NYLL.

38.     In the alternative, Defendants constitute a single employer of Plaintiffs and/or similarly situated individuals.

39.     Upon information and belief, Individual Defendants John Creegan and Brendan Creegan operate Defendant Corporations as either alter egos of themselves and/or failed to operate Defendant Corporations as entities legally separate and apart from themselves, by among other things:

    a)  failing to adhere to the corporate formalities necessary to operate Defendant Corporations as Corporations,

    b)  defectively forming or maintaining the corporate entities of Defendant Corporations, by, amongst other things, failing to hold annual meetings or maintaining appropriate corporate records,

    c)  transferring assets and debts freely as between all Defendants,

    d)  operating Defendant Corporations for their own benefit as the sole or majority shareholders,

    e)  operating Defendant Corporations for their own benefit and maintaining control over these corporations as closed Corporations,

    f)  intermingling assets and debts of their own with Defendant Corporations,

    g)  diminishing and/or transferring assets of Defendant Corporations to avoid full liability as necessary to protect their own interests, and

    h)  Other actions evincing a failure to adhere to the corporate form.

40.     At all relevant times, Defendants were Plaintiffs' employers within the meaning of the FLSA and New York Labor Law. Defendants had the power to hire and fire Plaintiffs, controlled the terms and conditions of employment, and determined the rate and method of any compensation in exchange for Plaintiffs' services.

41.     In each year from 2014 to 2019, Defendants, both separately and jointly, had a gross annual volume of sales of not less than $500,000 (exclusive of excise taxes at the retail level that are separately stated).

42.     In addition, upon information and belief, Defendants and/or their enterprise were directly engaged in interstate commerce. As an example, numerous items that were used in the bars on a daily basis are goods produced outside of the State of New York.

*Individual Plaintiffs*

43.     Plaintiffs are former employees of Defendants who were employed as a salad maker, a busser, a barback, a food runner, a porter and dishwashers .Plaintiffs seek to represent a class of similarly situated individuals under 29 U.S.C. 216(b).

*Plaintiff Rafael Pajoj Guarquex*

44.     Plaintiff Pajoj was employed by Defendants from approximately March 2015 until on or about November 2015.

45.     Defendants employed Plaintiff Pajoj as a dishwasher and a salad maker.

46.     Plaintiff Pajoj regularly handled goods in interstate commerce, such as food and other supplies produced outside the State of New York.

47.     Plaintiff Pajoj's work duties required neither discretion nor independent judgment.

48.     Throughout his employment with Defendants, Plaintiff Pajoj regularly worked in excess of 40 hours per week.

49.     From approximately March 2015 until on or about March 2016, Plaintiff Pajoj worked from approximately 5:00 p.m. until on or about 5:00 a.m. to 6:00 a.m., Mondays through Saturdays (typically 72 to 78 hours per week).

50.     From approximately April 2016 until on or about December 2018, Plaintiff Pajoj worked from approximately 10:00 a.m. until on or about 8:00 p.m. to 9:00 p.m., Mondays through Saturdays (typically 60 to 66 hours per week).

51.     From approximately January 2019 until on or about November 2019, Plaintiff Pajoj worked from approximately 11:00 a.m. until on or about 8:00 p.m., Mondays through Saturdays (typically 54 hours per week).

52.     From approximately March 2015 until on or about March 2016, Defendants paid Plaintiff Pajoj his wages in cash.

53.     From approximately April 2016 until on or about November 2019, Defendants paid Plaintiff Pajoj his wages by check.

54.     From approximately March 2015 until on or about March 2016, Defendants paid Plaintiff Pajoj $8.00 per hour.

55.     From approximately April 2016 until on or about December 2017, Defendants paid Plaintiff Pajoj $11.00 per hour.

56.     From approximately January 2018 until on or about December 2018, Defendants paid Plaintiff Pajoj $14.00 per hour.

57.     From approximately January 2019 until on or about April 2019, Defendants paid Plaintiff Pajoj $15.00 per hour.

58.     From approximately May 2019 until on or about November 2019, Defendants paid Plaintiff Pajoj $16.00 per hour.

59.    Defendants did not pay Plaintiff Pajoj approximately $280.00 in wages for work he had performed.

60.    Plaintiff Pajoj's pay did not vary even when he was required to stay later or work a longer day than his usual schedule.

61.    For example, Defendants required Plaintiff Pajoj to work an additional 2 hours past his scheduled departure time two days a week, and did not pay him for the additional time he worked.

62.    Defendants never granted Plaintiff Pajoj any breaks or meal periods of any kind; however, defendants deducted two to six hours from Plaintiff Pajoj's hours for meal periods they did not grant him.

63.    In addition, in order to get paid, Plaintiff Pajoj was required to sign a document in which Defendants misrepresented the hours that he worked per week.

64.    Defendants took improper and illegal deductions from Plaintiff Pajoj's wages; specifically, Defendants reduced Plaintiff Pajoj's weekly wages for errors in deliveries that he was not responsible for.

65.    No notification, either in the form of posted notices or other means, was ever given to Plaintiff Pajoj regarding overtime and wages under the FLSA and NYLL.

66.    Defendants did not provide Plaintiff Pajoj an accurate statement of wages, as required by NYLL 195(3).

67.    In fact, Defendants adjusted Plaintiff Pajoj's paystubs so that they reflected inaccurate wages and hours worked.

68.    Defendants did not give any notice to Plaintiff Pajoj, in English and in Spanish (Plaintiff Pajoj's primary language), of his rate of pay, employer's regular pay day, and such other information as required by NYLL §195(1).

*Plaintiff Jose Alfredo Beatriz Mendez*

69.     Plaintiff Beatriz was employed by Defendants from approximately May 17, 2014 until on or about October 2015 and from approximately November 2017 until on or about November 25, 2019.

70.     Defendants employed Plaintiff Beatriz as a dishwasher and a porter.

71.     Plaintiff Beatriz regularly handled goods in interstate commerce, such as food and other supplies produced outside the State of New York.

72.     Plaintiff Beatriz's work duties required neither discretion nor independent judgment.

73.     From approximately May 17, 2014 until on or about October 15, 2015, Plaintiff Beatriz worked at the John Sullivan's location as a porter from approximately 11:00 p.m. until on or about 8:00 a.m., Mondays, Tuesdays, and Saturdays, as a dishwasher from approximately 9:00 a.m. until on or about 5:00 p.m., Wednesdays, Thursdays, and Fridays and from approximately 8:00 a.m. until on or about 5:00 p.m., Saturdays, Mondays and Tuesdays and as a dishwasher and kitchen cleaner from approximately 8:00 a.m. until on or about 4:00 p.m., on Sundays (typically 86 hours per week).

74.     From approximately November 25, 2017 until on or about January 1, 2019, Plaintiff Beatriz worked At the John Sullivan's location from approximately 7:00 a.m. until on or about 5:00 p.m. to 8:00 p.m., Mondays through Saturdays and from approximately 7:00 a.m. until on or about 12:00 p.m. to 3:00 p.m., on Sundays (typically 65 to 86 hours per week).

75.     From approximately January 2019 until on or about October 1, 2019, Plaintiff Beatriz worked at the John Sullivan's location from approximately 8:00 a.m. until on or about 4:00 p.m., Mondays through Fridays (typically 40 hours per week).

76.    From approximately September 7, 2019 until on or about November 18, 2019, Plaintiff Beatriz worked at the Jack Doyle's location from approximately 4:00 p.m. until on or about 12:00 a.m., on Mondays and Tuesdays (typically 16 hours per week).

77.    From approximately October 1, 2019 until on or approximately November 25, 2019, Plaintiff Beatriz worked at the John Sullivan's location from approximately 8:00 a.m. until on or about 4:00 p.m., Mondays through Saturdays (typically 48 hours per week).

78.    Throughout his employment, Defendants paid Plaintiff Beatriz his wages in a combination of check and cash.

79.    From approximately May 17, 2014 until on or about December 2014, Defendants paid Plaintiff Beatriz $8.00 per hour.

80.    From approximately January 2015 until on or about October 15, 2015, Defendants paid Plaintiff Beatriz $9.00 per hour.

81.    From approximately November 25, 2017 until on or about December 2017, Defendants paid Plaintiff Beatriz $16.00 per hour.

82.    From approximately January 2018 until on or about November 25, 2019, Defendants paid Plaintiff Beatriz $17.00 per hour.

83.    For approximately his last two days, Defendants did not pay Plaintiff Beatriz any wages for his work.

84.    Plaintiff Beatriz's pay did not vary even when he was required to stay later or work a longer day than his usual schedule.

85.    For example, Defendants required Plaintiff Beatriz to work an additional 3 to 4 hours past his scheduled departure time on some occasions, and did not pay him for the additional time he worked.

86.    Defendants never granted Plaintiff Beatriz any breaks or meal periods of any kind.

87.     Plaintiff Beatriz was not required to keep track of his time, nor to his knowledge, did the Defendants utilize any time tracking device such as punch cards, that accurately reflected his actual hours worked.

88.     In addition, in order to get paid, Plaintiff Beatriz was required to sign a document in which Defendants misrepresented the hours that he worked per week.

89.     No notification, either in the form of posted notices or other means, was ever given to Plaintiff Beatriz regarding overtime and wages under the FLSA and NYLL.

90.     Defendants did not provide Plaintiff Beatriz an accurate statement of wages, as required by NYLL 195(3).

91.     In fact, Defendants adjusted Plaintiff Beatriz's paystubs so that they reflected inaccurate wages and hours worked.

92.     Defendants did not give any notice to Plaintiff Beatriz, in English and in Spanish (Plaintiff Beatriz's primary language), of his rate of pay, employer's regular pay day, and such other information as required by NYLL §195(1).

93.     Defendants required Plaintiff Beatriz to purchase "tools of the trade" with his own funds—including shoes.

*Plaintiff Guillermo Rodriguez Portillo*

94.     Plaintiff Rodriguez was employed by Defendants from approximately February 15, 2019 until on or about October 6, 2019.

95.     Defendants ostensibly employed Plaintiff Rodriguez as a busser, barback, and runner.

96.     Plaintiff Rodriguez regularly handled goods in interstate commerce, such as food and other supplies produced outside the State of New York.

97.     Plaintiff Rodriguez's work duties required neither discretion nor independent judgment.

98.     Throughout his employment with Defendants, Plaintiff Rodriguez regularly worked in excess of 40 hours per week.

99.     From approximately February 15, 2019 until on or about April 3, 2019, Plaintiff Rodriguez worked at the Tailor Public House location from approximately 10:00 a.m. until on or about 6:00 p.m., 2 days a week and from approximately 5:00 p.m. until on or about 12:00 a.m., 2 days a week (typically 30 hours per week).

100.    From approximately April 4, 2019 until on or about June 30, 2019, Plaintiff Rodriguez worked at the John Sullivan's location from approximately 8:00 a.m. until on or about 6:00 p.m., Mondays through Thursdays (typically 40 hours per week).

101.    From approximately July 2019 until on or about October 6, 2019, Plaintiff Rodriguez worked at the John Sullivan's location from approximately 8:00 a.m. until on or about 6:00 p.m., 2 days a week and from approximately 5:00 p.m. until on or about 4:30 a.m., 2 days a week (typically 43 hours per week).

102.    From approximately February 15, 2019 until on or about April 3, 2019, Defendants paid Plaintiff Rodriguez his wages by check.

103.    From approximately April 4, 2019 until on or about October 6, 2019, Defendants paid Plaintiff Rodriguez his wages in cash.

104.    From approximately February 15, 2019 until on or about October 6, 2019, Defendants paid Plaintiff Rodriguez $10.00 per hour.

105.    Plaintiff Rodriguez's pay did not vary even when he was required to stay later or work a longer day than his usual schedule.

106.    For example, Defendants required Plaintiff Rodriguez to work an additional 30 minutes past his scheduled departure time every night, and did not pay him for the additional time he worked.

107.     Defendants never granted Plaintiff Rodriguez any breaks or meal periods of any kind.

108.     Plaintiff Rodriguez was never notified by Defendants that his tips were being included as an offset for wages.

109.     Defendants withheld a portion of Plaintiff Rodriguez's tips; specifically, Defendants were aware the bartenders would take approximately $20 from Plaintiff Rodriguez's overall tips.

On or about August 2019, Plaintiff Rodriguez was not required to keep track of his time at the John Sullivan's location, nor to his knowledge, did the Defendants utilize any time tracking device such as punch cards that accurately reflected his actual hours worked.

110.     In addition, in order to get paid, Plaintiff Rodriguez was required to sign a document at the Tailor Public House location in which Defendants misrepresented the hours that he worked per week.

a.     No notification, either in the form of posted notices or other means, was ever given to Plaintiff Rodriguez regarding overtime and wages under the FLSA and NYLL.

111.     Defendants did not provide Plaintiff Rodriguez an accurate statement of wages, as required by NYLL 195(3).

112.     Defendants did not give any notice to Plaintiff Rodriguez, in English and in Spanish (Plaintiff Rodriguez's primary language), of his rate of pay, employer's regular pay day, and such other information as required by NYLL §195(1).

113.     Defendants required Plaintiff Rodriguez to purchase "tools of the trade" with his own funds—including uniform shirts and shoes.

*Defendants' General Employment Practices*

114.     At all times relevant to this Complaint, Defendants maintained a policy and practice of requiring Plaintiffs (and all similarly situated employees) to work in excess of 40 hours a week

without paying them appropriate minimum wage, spread of hours pay, and overtime compensation as required by federal and state laws.

115.    Plaintiffs were victims of Defendants' common policy and practices which violate their rights under the FLSA and New York Labor Law by, *inter alia*, not paying them the wages they were owed for the hours they worked..

116.    Defendants' pay practices resulted in Plaintiffs not receiving payment for all their hours worked, and resulted in Plaintiffs' effective rate of pay falling below the required minimum wage rate.

117.    Defendants habitually required Plaintiffs to work additional hours beyond their regular shifts but did not provide them with any additional compensation.

118.    Plaintiff Rodriguez were paid at the tip credit rate by Defendants.

119.    In violation of federal and state law as codified above, Defendants classified Plaintiff Rodriguez as tipped employees, and paid him at a rate that was at the tip credit rate when they should have classified him as non-tipped employee and paid him at the minimum wage rate.

120.    Defendants failed to inform Plaintiff Rodriguez who received tips that Defendants intended to take a deduction against Plaintiff's Rodriguez's earned wages for tip income, as required by the NYLL before any deduction may be taken.

121.    Defendants failed to inform Plaintiff Rodriguez who received tips, that his tips were being credited towards the payment of the minimum wage.

122.    Defendants failed to maintain a record of tips earned by Plaintiff Rodriguez who worked as barback for the tips he received. Defendants' time keeping system did not reflect the actual hours that Plaintiff Rodriguez worked.

123.    As part of its regular business practice, Defendants intentionally, willfully, and repeatedly harmed Plaintiff Rodriguez who received tips, by engaging in a pattern, practice, and/or

policy of violating the FLSA and the NYLL. This policy and pattern or practice included depriving barback of a portion of the tips earned during the course of employment.

124.    Defendants unlawfully misappropriated charges purported to be gratuities received by tipped Plaintiffs, and other tipped employees, in violation of New York Labor Law § 196-d (2007).

125.    Under the FLSA and NYLL, in order to be eligible for a "tip credit," employers of tipped employees must either allow employees to keep all the tips that they receive or forgo the tip credit or pay them the full hourly minimum wage.

126.    Defendants willfully disregarded and purposefully evaded recordkeeping requirements of the FLSA and NYLL by failing to maintain accurate and complete timesheets and payroll records.

127.    Defendants required Plaintiffs to sign a document that reflected inaccurate or false hours worked. Defendants paid Plaintiffs their wages in a combination of cash and check.

128.    Defendants failed to post at the workplace, or otherwise provide to employees, the required postings or notices to employees regarding the applicable wage and hour requirements of the FLSA and NYLL.

129.    Upon information and belief, these practices by Defendants were done willfully to disguise the actual number of hours Plaintiffs (and similarly situated individuals) worked, and to avoid paying Plaintiffs properly for their full hours worked.

130.    Defendants engaged in their unlawful conduct pursuant to a corporate policy of minimizing labor costs and denying employees compensation by knowingly violating the FLSA and NYLL.

131.    Defendants' unlawful conduct was intentional, willful, in bad faith, and caused significant damages to Plaintiffs and other similarly situated former workers.

132.     Defendants failed to provide Plaintiffs  and other employees with accurate wage statements at the time of their payment of wages, containing: the dates of work covered by that payment of wages; name of employee; name of employer; address and phone number of employer; rate or rates of pay and basis thereof, whether paid by the hour, shift, day, week, salary, piece, commission, or other; gross wages; deductions; allowances, if any, claimed as part of the minimum wage; net wages; the regular hourly rate or rates of pay; the overtime rate or rates of pay; the number of regular hours worked; and the number of overtime hours worked, as required by NYLL §195(3).

133.     Defendants failed to provide Plaintiffs  and other employees, at the time of hiring and on or before February 1 of each subsequent year, a statement in English and the employees' primary language, containing: the rate or rates of pay and basis thereof, whether paid by the hour, shift, day, week, salary, piece, commission, or other; allowances, if any, claimed as part of the minimum wage, including tip, meal, or lodging allowances; the regular pay day designated by the employer; the name of the employer; any "doing business as" names used by the employer; the physical address of the employer's main office or principal place of business, and a mailing address if different; and the telephone number of the employer, as required by New York Labor Law §195(1).

## FLSA COLLECTIVE ACTION CLAIMS

134.     Plaintiffs bring their FLSA minimum wage, overtime compensation, and liquidated damages claims as a collective action pursuant to FLSA Section 16(b), 29 U.S.C. § 216(b), on behalf of all similarly situated persons (the "FLSA Class members"), i.e., persons who are or were employed by Defendants or any of them, on or after the date that is three years before the filing of the complaint in this case (the "FLSA Class Period").

135.     At all relevant times, Plaintiffs and other members of the FLSA Class were similarly situated in that they had substantially similar job requirements and pay provisions, and have been subject to Defendants' common practices, policies, programs, procedures, protocols and plans

including willfully failing and refusing to pay them the required minimum wage, overtime pay at a one and one-half their regular rates for work in excess of forty (40) hours per workweek under the FLSA, and willfully failing to keep records under the FLSA.

136.    The claims of Plaintiffs stated herein are similar to those of the other employees.

## FIRST CAUSE OF ACTION

### VIOLATION OF THE MINIMUM WAGE PROVISIONS OF THE FLSA

137.    Plaintiffs repeat and reallege all paragraphs above as though fully set forth herein.

138.    At all times relevant to this action, Defendants were Plaintiffs' employers within the meaning of the Fair Labor Standards Act, 29 U.S.C. § 203(d).  Defendants had the power to hire and fire Plaintiffs (and the FLSA Class Members), controlled the terms and conditions of their employment, and determined the rate and method of any compensation in exchange for their employment.

139.    At all times relevant to this action, Defendants were engaged in commerce or in an industry or activity affecting commerce.

140.    Defendants constitute an enterprise within the meaning of the Fair Labor Standards Act, 29 U.S.C. § 203 (r-s).

141.    Defendants failed to pay Plaintiffs (and the FLSA Class members) at the applicable minimum hourly rate, in violation of 29 U.S.C. § 206(a).

142.    Defendants' failure to pay Plaintiffs (and the FLSA Class members) at the applicable minimum hourly rate was willful within the meaning of 29 U.S.C. § 255(a).

143.    Plaintiffs (and the FLSA Class members) were damaged in an amount to be determined at trial.

## SECOND CAUSE OF ACTION

### VIOLATION OF THE OVERTIME PROVISIONS OF THE FLSA

144.     Plaintiffs repeat and reallege all paragraphs above as though fully set forth herein.

145.     Defendants, in violation of 29 U.S.C. § 207(a)(1), failed to pay Plaintiffs (and the FLSA Class members) overtime compensation at a rate of one and one-half times the regular rate of pay for each hour worked in excess of forty hours in a work week.

146.     Defendants' failure to pay Plaintiffs (and the FLSA Class members), overtime compensation was willful within the meaning of 29 U.S.C. § 255(a).

147.     Plaintiffs (and the FLSA Class members) were damaged in an amount to be determined at trial.

## THIRD CAUSE OF ACTION

### VIOLATION OF THE NEW YORK MINIMUM WAGE ACT

148.     Plaintiffs repeat and reallege all paragraphs above as though fully set forth herein.

149.     At all times relevant to this action, Defendants were Plaintiffs' employers within the meaning of the N.Y. Lab. Law §§ 2 and 651.  Defendants had the power to hire and fire Plaintiffs, controlled the terms and conditions of their employment, and determined the rates and methods of any compensation in exchange for their employment.

150.     Defendants, in violation of NYLL § 652(1) and the supporting regulations of the New York State Department of Labor, paid Plaintiffs less than the minimum wage.

151.     Defendants' failure to pay Plaintiffs the minimum wage was willful within the meaning of N.Y. Lab. Law § 663.

152.     Plaintiffs were damaged in an amount to be determined at trial.

## FOURTH CAUSE OF ACTION

### VIOLATION OF THE OVERTIME PROVISIONS

OF THE NEW YORK STATE LABOR LAW

153.     Plaintiffs repeat and reallege all paragraphs above as though fully set forth herein.

154.     Defendants, in violation of N.Y. Lab. Law § 190 *et seq.*, and supporting regulations of the New York State Department of Labor, failed to pay Plaintiffs overtime compensation at rates of one and one-half times the regular rate of pay for each hour worked in excess of forty hours in a work week.

155.     Defendants' failure to pay Plaintiffs overtime compensation was willful within the meaning of N.Y. Lab. Law § 663.

156.     Plaintiffs were damaged in an amount to be determined at trial.

## FIFTH CAUSE OF ACTION

### VIOLATION OF THE SPREAD OF HOURS WAGE ORDER

### OF THE NEW YORK COMMISSIONER OF LABOR

157.     Plaintiffs repeat and reallege all paragraphs above as though fully set forth herein.

158.     Defendants failed to pay Plaintiffs one additional hour's pay at the basic minimum wage rate before allowances for each day Plaintiffs' spread of hours exceeded ten hours in violation of NYLL §§ 650 *et seq.* and 12 N.Y.C.R.R. §§ 146-1.6.

159.     Defendants' failure to pay Plaintiffs an additional hour's pay for each day Plaintiffs' spread of hours exceeded ten hours was willful within the meaning of NYLL § 663.

160.     Plaintiffs were damaged in an amount to be determined at trial.

## SIXTH CAUSE OF ACTION

### VIOLATION OF THE NOTICE AND RECORDKEEPING

### REQUIREMENTS OF THE NEW YORK LABOR LAW

161.     Plaintiffs repeat and reallege all paragraphs above as though fully set forth herein.

162.     Defendants failed to provide Plaintiffs with a written notice, in English and in Spanish (Plaintiffs' primary language), containing: the rate or rates of pay and basis thereof, whether paid by the hour, shift, day, week, salary, piece, commission, or other; allowances, if any, claimed as part of the minimum wage, including tip, meal, or lodging allowances; the regular pay day designated by the employer; the name of the employer; any "doing business as" names used by the employer; the physical address of the employer's main office or principal place of business, and a mailing address if different; and the telephone number of the employer, as required by NYLL §195(1).

163.     Defendants are liable to each Plaintiff in the amount of $5,000, together with costs and attorneys' fees.

## SEVENTH CAUSE OF ACTION

### VIOLATION OF THE WAGE STATEMENT PROVISIONS

### OF THE NEW YORK LABOR LAW

164.     Plaintiffs repeat and reallege all paragraphs above as though fully set forth herein.

165.     With each payment of wages, Defendants failed to provide Plaintiffs with an accurate statement listing each of the following: the dates of work covered by that payment of wages; name of employee; name of employer; address and phone number of employer; rate or rates of pay and basis thereof, whether paid by the hour, shift, day, week, salary, piece, commission, or other; gross wages; deductions; allowances, if any, claimed as part of the minimum wage; net wages; the regular hourly rate or rates of pay; the overtime rate or rates of pay; the number of regular hours worked; and the number of overtime hours worked, as required by NYLL 195(3).

166.     Defendants are liable to each Plaintiff in the amount of $5,000, together with costs and attorneys' fees.

## EIGHTH CAUSE OF ACTION

### RECOVERY OF EQUIPMENT COSTS

167.    Plaintiffs repeat and reallege all paragraphs above as though fully set forth herein.

168.    Defendants required Plaintiffs to pay, without reimbursement, the costs and expenses for purchasing and maintaining equipment and "tools of the trade" required to perform their jobs, further reducing their wages in violation of the FLSA and NYLL.  29 U.S.C.  § 206(a); 29 C.F.R. § 531.35; N.Y. Lab. Law §§ 193 and 198-b.

169.    Plaintiffs were damaged in an amount to be determined at trial.

## NINTH CAUSE OF ACTION

## UNLAWFUL DEDUCTIONS FROM TIPS IN VIOLATION

## OF THE NEW YORK LABOR LAW

170.    Plaintiffs repeat and reallege all paragraphs above as though fully set forth herein.

171.    At all relevant times, Defendants were Plaintiff Rodriguez's employers within the meaning of the N.Y. Lab. Law §§ 2 and 651.

172.    New York State Labor Law § 196-d prohibits any employer or his agents, including owners and managers, from demanding or accepting, directly or indirectly, any part of the gratuities received by an employee, or retaining any part of a gratuity, or any charge purported to be a gratuity, for an employee.

173.    Defendants unlawfully misappropriated a portion of Plaintiff Rodriguez's tips that were received from customers.

174.    Defendants knowingly and intentionally retained a portion of Plaintiff Rodriguez's tips in violations of the NYLL and supporting Department of Labor Regulations.

175.    Plaintiffs were damaged in an amount to be determined at trial.

## TENTH CAUSE OF ACTION
## UNLAWFUL DEDUCTIONS FROM WAGES IN VIOLATION

## OF THE NEW YORK LABOR LAW

176.    Plaintiffs repeat and reallege all paragraphs above as though set forth fully herein.

177.   At all relevant times, Defendants were Plaintiffs' employers within the meaning of the N.Y. Lab. Law §§ 2 and 651.

178.   Defendants made unlawful deductions from Plaintiffs' wages; specifically, Defendants reduced Plaintiff Ganjoj's weekly wages for errors in deliveries.

179.   The deductions made from Plaintiffs' wages were not authorized or required by law.

180.   Through their knowing and intentional efforts to take unauthorized deductions from Plaintiffs' wages, Defendants willfully violated NYLL, Article 6, §§ 190 *et seq.*, and supporting New York State regulations.

Plaintiffs were damaged in an amount to be determined at trial.

## ELEVENTH CAUSE OF ACTION

## VIOLATION OF THE TIMELY PAYMENT PROVISIONS

## OF THE NEW YORK LABOR LAW

181.   Plaintiffs repeat and reallege all paragraphs above as though set forth fully herein.

182.   Defendants did not pay Plaintiffs on a regular weekly basis, in violation of NYLL §191.

183.   Defendants are liable to each Plaintiff in an amount to be determined at trial.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs respectfully request that this Court enter judgment against Defendants by:

(a)   Designating this action as a collective action and authorizing prompt issuance of notice pursuant to 29 U.S.C. § 216(b) to all putative class members apprising them of the pendency of this action, and permitting them to promptly file consents to be Plaintiffs in the FLSA claims in this action;

(b)     Declaring that Defendants violated the minimum wage provisions of, and associated rules and regulations under, the FLSA as to Plaintiffs and the FLSA Class members;

(c)     Declaring that Defendants violated the overtime wage provisions of, and associated rules and regulations under, the FLSA as to Plaintiffs and the FLSA Class members;

(d)     Declaring that Defendants violated the recordkeeping requirements of, and associated rules and regulations under, the FLSA with respect to Plaintiffs' and the FLSA Class members' compensation, hours, wages, and any deductions or credits taken against wages;

(e)     Declaring that Defendants' violations of the provisions of the FLSA were willful as to Plaintiffs and the FLSA Class members;

(f)     Awarding Plaintiffs and the FLSA Class members damages for the amount of unpaid minimum wage, overtime compensation, and damages for any improper deductions or credits taken against wages under the FLSA as applicable;

(g)     Awarding Plaintiffs and the FLSA Class members liquidated damages in an amount equal to 100% of their damages for the amount of unpaid minimum wage and overtime compensation, and damages for any improper deductions or credits taken against wages under the FLSA as applicable pursuant to 29 U.S.C. § 216(b);

(h)     Declaring that Defendants violated the minimum wage provisions of, and rules and orders promulgated under, the NYLL as to Plaintiffs;

(i)     Declaring that Defendants violated the overtime wage provisions of, and rules and orders promulgated under, the NYLL as to Plaintiffs;

(j)     Declaring that Defendants violated the spread-of-hours requirements of the NYLL and supporting regulations as to Plaintiffs;

(k)     Declaring that Defendants violated the timely payment provisions of the NYLL as to Plaintiffs;

(l)     Declaring that Defendants violated the notice and recordkeeping requirements of the NYLL with respect to Plaintiffs' compensation, hours, wages and any deductions or credits taken against wages;

(m)     Declaring that Defendants' violations of the provisions of the NYLL and spread of hours wage order were willful as to Plaintiffs;

(n)     Awarding Plaintiffs damages for the amount of unpaid minimum wage and overtime compensation, and for any improper deductions or credits taken against wages, as well as awarding spread of hours pay under the NYLL as applicable

(o)     Awarding Plaintiffs damages for Defendants' violation of the NYLL notice and recordkeeping provisions, pursuant to NYLL §§198(1-b), 198(1-d);

(p)     Awarding Plaintiffs liquidated damages in an amount equal to one hundred percent (100%) of the total amount of minimum wage, overtime compensation, and spread of hours pay shown to be owed pursuant to NYLL § 663 as applicable; and liquidated damages pursuant to NYLL § 198(3);

(q)     Awarding Plaintiffs and the FLSA Class members pre-judgment and post-judgment interest as applicable;

(r)      Awarding Plaintiffs and the FLSA Class members the expenses incurred in this action, including costs and attorneys' fees;

(s)     Providing that if any amounts remain unpaid upon the expiration of ninety days following issuance of judgment, or ninety days after expiration of the time to appeal and no appeal is then pending, whichever is later, the total amount of judgment shall automatically increase by fifteen percent, as required by NYLL § 198(4); and

(t)     All such other and further relief as the Court deems just and proper.

**<u>JURY DEMAND</u>**

Plaintiffs demand a trial by jury on all issues triable by a jury.

Dated: New York, New York

   January 3, 2020

MICHAEL FAILLACE & ASSOCIATES, P.C.

By:       /s/ Michael Faillace

Michael Faillace [MF-8436]
60 East 42nd Street, Suite 4510
New York, New York 10165
Telephone: (212) 317-1200
Facsimile: (212) 317-1620
*Attorneys for Plaintiffs*

# Michael Faillace & Associates, P.C.
### Employment and Litigation Attorneys

60 E 42nd Street, Suite 4510
New York, New York 10165

Telephone: (212) 317-1200
Facsimile: (212) 317-1620

Faillace@employmentcompliance.com

December 3, 2019

BY HAND

TO:     Clerk of Court,

I hereby consent to join this lawsuit as a party plaintiff.
**(Yo, por medio de este documento, doy mi consentimiento para formar parte de la demanda como uno de los demandantes.)**

Name / Nombre:                    Jose Alfredo Beatriz Mendez

Legal Representative / Abogado:   Michael Faillace & Associates, P.C.

Signature / Firma:

Date / Fecha:                     3 de Diciembre 2019

*Certified as a minority-owned business in the State of New York*

# Michael Faillace & Associates, P.C.

### Employment and Litigation Attorneys

60 E 42nd Street, Suite 4510
New York, New York 10165

Telephone: (212) 317-1200
Facsimile: (212) 317-1620

Faillace@employmentcompliance.com

December 27, 2019

BY HAND

TO:   Clerk of Court,

I hereby consent to join this lawsuit as a party plaintiff.
**(Yo, por medio de este documento, doy mi consentimiento para formar parte de la demanda como uno de los demandantes.)**

Name / Nombre:               Guillermo Rodriguez Portillo

Legal Representative / Abogado:   Michael Faillace & Associates, P.C.

Signature / Firma:

Date / Fecha:               27 de deciembre 2019

*Certified as a minority-owned business in the State of New York*

# Michael Faillace & Associates, P.C.

### Employment and Litigation Attorneys

60 E 42nd Street, Suite 4510
New York, New York 10165

Telephone: (212) 317-1200
Facsimile: (212) 317-1620

─────────

Faillace@employmentcompliance.com

December 9, 2019

BY HAND

TO:     Clerk of Court,

I hereby consent to join this lawsuit as a party plaintiff.
**(Yo, por medio de este documento, doy mi consentimiento para formar parte de la demanda como uno de los demandantes.)**

Name / Nombre:                    Rafael Panjoj Guarquex

Legal Representative / Abogado:    Michael Faillace & Associates, P.C.

Signature / Firma:

Date / Fecha:                     9 de Diciembre 2019

*Certified as a minority-owned business in the State of New York*